# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CUMMINGS, MCCLOREY,
DAVIS AND ACHO, PLC,

       Plaintiff,

                                       Case No. 08-CV-11604

v.

PATRICK ENG and ENG AND WOODS, P.C.,

       Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S "MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION," AND DISMISSING CASE FOR LACK OF PERSONAL JURISDICTION

This case, at its core, calls substantially into question the ethics and standards of Missouri personal injury attorney Patrick Eng and his firm, Eng & Woods, P.C. Pending, however, is not the core issue, but only a motion filed by Defendants on May 19, 2008, seeking dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, a transfer of venue pursuant to 28 U.S.C. §1404 and Federal Rule of Civil Procedure 12(b)(3). The matter has been fully briefed and the court concludes that a hearing is unnecessary. See E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant the motion to dismiss this action for lack of personal jurisdiction and deny as moot the alternative request to transfer venue.

## I. BACKGROUND

In this case, Plaintiff Cummings, McClorey, Davis and Acho, PLC, a Michigan law firm, alleges that Defendants have refused to share a proper, agreed-upon referral fee following a jury award in a wrongful death case tried in Missouri by Defendants but

referred to them by Plaintiff. The complaint alleges that "Defendants enticed Plaintiff to

refer [the wrongful death] case, with the false promise of a one-third referral fee

agreement that they never intended to pay." (Compl. at ¶ 30.)  Plaintiff's seven-count

complaint asserts four causes of action against Defendant Patrick Eng and Defendant

Eng & Woods, P.C. ("Defendants"): Breach of Contract (Count III), Fraud and

Misrepresentation (Count IV), Unjust Enrichment (Count V), and Bad Faith (Count VI).[1]

Plaintiff's complaint states that Plaintiff "is a lawfirm . . . located in the City of Livonia,

State of Michigan, and at all times pertinent hereto, conducted and transacted all

business from this location."  (*Id.* at ¶ 2.)  According to Defendant Patrick Eng's affidavit,

he is "a citizen of Missouri," Defendant Eng & Woods' "principle place of business and

office . . . is located in Columbia, Boone County, Missouri" and "Defendants do not

transact any business in Michigan, and have never advertised their services in, or

solicited business from, Michigan."  (Patrick Eng Aff. at ¶¶ 2, 5, 10, Defs.' Mot. Ex. A.)


The motor vehicle accident death case at issue in this case ("*Barbieri*") "arises

from the death of Beverly Townsend on November 9, 2006 . . . .  [She] was survived by

. . . Lorene Barbieri, adult natural daughter, Khemya Mit[R]ahina[2], adult natural

---

[1]Count I addresses venue, jurisdiction and parties and Count II addresses common allegations.  The complaint also asserts one cause of action against only Patrick Eng., Breach of Contract (Count VII), relating to the collection of fees in a separate legal matter.  Defendant claims to have since paid the fee in question.  (5/2/08 Certified Letter allegedly containing cashier check, Defs.' Mot. Ex. F.)

[2]Khemya MitRahina is refereed to as Kimberly Richina by Plaintiff.  (Unsigned Michael Richina Aff. at ¶ 1, Pl.'s Br. Ex. 4.)

daughter, and Michael Richina, adult natural son." (12/20/07 Missouri Court Order

Approving Settlement of Wrongful Death Claim at 2-3, Defs.' Mot. Ex. D.)

According to Michael Richina's ("Richina's") unsigned affidavit, his "first contact

with an attorney" regarding his mother's (and his stepfather's) death was with James R.

Acho, a Michigan attorney[3]. (Richina Aff. at ¶ 2, Pl.'s Br. Ex. 4.) Plaintiff alleges that

James Acho then contacted a number of Missouri firms regarding *Barbieri*, and

consequently learned of Defendant Patrick Eng, and his law firm of Eng. & Woods.

(Compl. at ¶ 13.) According to Plaintiff:

> Over the course of a week or more, and innumerable phone calls from
> Livonia, Michigan to Columbia, Missouri and vice versa, James Acho and
> Defendant Patrick Eng agreed that Defendant Eng and his lawfirm of Eng
> & Woods should be the lawfirm to take on Michael Richina and ultimately
> his sister Kimberly's case also . . . .

(*Id.* at ¶ 15.) According to Richina, "James Acho did refer Patrick Eng . . . and as a

result of James Acho's referral [Michael Richina and his sister] retained Patrick Eng and

Eng & Woods to represent [them]." (Richina Aff. at ¶ 5, Pl.'s Br. Ex. 4.) On November

18, 2006 Richina and Khemya MitRahina (who is also referred to as Kimberly Richina

by Plaintiff) each entered into a contingent fee contract[4] with Defendant Eng & Woods

for the *Barbieri* case. (Contingent Fee Contracts, Defs.' Mot. Ex. B.)

---

[3]Michael Richina "agreed both directly with James Acho, and through [his] uncle Ernie Fazio who was acting as a conduit, that James Acho and his law firm would either handle the lawsuit in Missouri, or refer [the] case to competent legal counsel in Missouri." (Michael Richina Aff. at ¶ 3, Pl.'s Br. Ex. 4.)

[4]According to Defendant Patrick Eng's affidavit, "[n]either Mike Richina nor Khemya MitRahina ever discussed or mentioned any understanding that Cummings, McClorey, Davis & Acho, P.L.C. would receive a '1/3 referral fee' when they entered into their contingent fee contracts . . . ." (Patrick J. Eng Aff. at ¶ 3, Defs.' Reply Ex. G.)

On December 1, 2006 James Acho sent a fax to Defendant Eng in which James Acho summarized his understanding of an alleged agreement that he and Patrick Eng reached over the phone. (12/1/06 Fax, Pl.'s Br. Ex. 1.) Acho wrote that his "firm will retain a one-third (33 1/3%) consulting fee against any recovery Eng & Woods garners on behalf of Mike Ricchina [sic], or any other party the firm represents as a result of the action." (*Id.*) Plaintiff alleges that on December 5, 2006 Defendant Patrick Eng called James Acho "to confirm that he received the faxed letter" and that "[h]e also reiterated that Eng & Woods intended to honor the one-third referral fee agreement." (Pl.'s Br. at 2 (citing File Note, Pl.'s Br. Ex. 2).)

On December 20, 2007 a judgment and order approving settlement for the *Barbieri* case awarded $375,000 in attorney fees and $20,958.64 in expenses to Defendant Eng & Woods (12/20/07 Missouri Court Order at 2-4, Defs.' Mot. Ex. D.) According to Richina, "[a]t the time the disbursements were made when the case resolved, [Richina] asked Patrick Eng if Mr. Acho would receive his referral fee and Mr. Eng explained 'Yes, he'll get his 33 1/3 of our legal fee.'" (Richina Aff. at ¶ 10, Pl.'s Br. Ex. 4.) However, according to Defendant Patrick Eng, no such discussion took place. (Patrick Eng Aff. at ¶¶ 4-5, Defs.' Reply Ex. G.) Moreover, in another affidavit he stated that "[n]either [he], nor the partnership doing business as Eng & Woods, agreed to pay a '1/3 referral fee' to Cummings, McClorey, Davis & Acho, P.L.C. for the prosecution [sic] the wrongful death claims in *Barbieri . . . .*" (Patrick Eng Aff. at ¶ 9, Defs.' Mot. Ex. A.)

Plaintiff's complaint asserts Eng & Woods sent a check for $18,562.50 (approximately a five percent referral fee) to James Acho. (Compl. at ¶ 26.) Plaintiff

4

then claims that when James Acho contacted Defendants regarding this amount,

Defendants denied the existence of a one-third referral fee agreement, and noted even

if such an agreement existed, because the Plaintiffs "did not actively prosecute the case

. . . Plaintiffs would only be entitled to 10% referral fee." (*Id.* at ¶ 27.) Plaintiff's

complaint contends that Defendants later put a stop payment on the check. (*Id.* at ¶ 28;

Pl.'s Br. at 4.) Plaintiff alleges that Defendant Eng said to James Acho: "We got you

boy. Check out a case called *Neilson v McCloskey*. . . . You don't practice in Missouri."

(Compl. at ¶¶ 48-49*).* According to Plaintiff, if they had known about the Defendants'

intentions, they "would have handled it pro hac vice . . . ." (*Id. at* ¶ 53.)[5]

## II. STANDARD

If a district court lacks jurisdiction over the defendants, dismissal is appropriate

under Federal Rule of Civil Procedure 12(b)(2). "The burden of establishing jurisdiction

is on the plaintiff." *Tobin v. Astra Pharm. Prod., Inc.*, 993 F.2d 528, 543 (6th Cir. 1993).

The court has three procedural options when presented with a Rule 12(b)(2) motion to

dismiss. It may decide the motion upon the affidavits alone, it may allow discovery in

aid of deciding the motion, or it may conduct an evidentiary hearing to resolve factual

questions. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991); *Ford Motor

Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763, 770 (E.D. Mich. 2001).

---

[5]"On May 13, 2008, Patrick J. Eng, Matthew B. Woods, Douglas F. Pugh, Thad
Mulholland, and Jonathan D. McQuilkin, d/b/a Eng and Woods, filed a declaratory
judgment action in the U.S. District Court for the Western District of Missouri asking the
court to declare that CMDA has no right to a '1/3 referral fee' for the Richina and
MitRahina matters, and that they are prohibited by Missouri Supreme Court Rule 4-1.5
from paying CMDA such a fee. Ex. E, *Eng et al v. Cummings, McClorey, Davis and
Acho, PLC*, Case No. 2:08-cv-04103-WAK (W.D. Mo. May 13, 2008)." (Defs.' Mot. at 4.)

If the court rules on written submissions alone, the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, "by affidavit or otherwise [,] . . . specific facts showing that the court has jurisdiction." When the trial court has determined that the motion to dismiss for lack of personal jurisdiction can be decided upon these written submissions, it "must consider the pleadings and affidavits in the light most favorable to the plaintiff." Thus, [the party's] burden is merely that of making a prima facie showing that personal jurisdiction exists. If [the party] meets that burden the motion to dismiss should be denied, "notwithstanding any controverting presentation by the moving party."

*Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citations omitted).

### III. DISCUSSION

A federal court's exercise of jurisdiction over litigants in a diversity of citizenship case must be both "(1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002).

Where, as in this case, the state's long-arm statute extends to the limits of the Due Process Clause, the two inquiries merge. *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996); *Sports Authority Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 810 (E.D. Mich. 2000) ("The Michigan Supreme Court has construed Michigan's long-arm statute to bestow the broadest possible grant of personal jurisdiction consistent with due process.") (citing *Sifers v. Horen,* 188 N.W.2d 623 (Mich. 1971)); *see also Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1236 (6th Cir. 1981) (Michigan long-arm statute confers "on the state courts that maximum scope

of personal jurisdiction permitted by the Due Process Clause of the Fourteenth Amendment.").

Due process is satisfied if the defendant has "sufficient minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fairplay and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (citation omitted). In analyzing the due process limits on personal jurisdiction, courts distinguish two different means for exercising jurisdiction: general jurisdiction and specific jurisdiction. *Conti v. Pneumatic Prods., Corp.,* 977 F.2d 978, 981 (6th Cir. 1992). There is no dispute that Defendants are outside of the general jurisdiction of Michigan.[6] Rather, the parties focus on whether there is specific jurisdiction over Defendants in Michigan.

"[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Ultimately, the defendant's conduct and connection with the forum must be such that he "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 474 (1985). The Sixth Circuit has formulated

---

[6]General jurisdiction is proper only when a defendant's contacts with the forum state are continuous and systematic, permitting the court to exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state. *Helicoperos Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984); *Youn v. Track, Inc.*, 324 F.3d 409, 418 (6th Cir. 2003); *Bird v. Parsons,* 289 F.3d 865, 873 (6th Cir. 2002).

the following three-part test for the due process considerations for specific personal

jurisdiction (the "*Mohasco* factors"):

> First, the defendant must purposefully avail himself of the privilege of
> acting in the forum state or causing a consequence in the forum state.
> Second, the cause of action must arise from the defendant's activities
> there. Finally, the acts of the defendant or consequences caused by the
> defendant must have a substantial enough connection with the forum state
> to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

In cases involving interstate contracts, "the Supreme Court has emphasized that

parties who reach out beyond one state and create continuing relationships and

obligations with citizens of another state are subject to regulation and sanctions for the

consequences of their activities." *Air Products and Controls, Inc. v. Safetech Int'l.*, 503

F.3d 544, 551 (6th Cir. 2007) (citing *Burger King*, 471 U.S. at 473; *Travelers Health

Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)) (quotations omitted). Merely entering into a

contract with an out-of-state party is insufficient; there must also be "the presence of

certain factors in addition to the contract will be found to constitute purposeful

availment." *Id.* (citation omitted). Factors to consider are "prior negotiations and

contemplated future consequences, along with the terms of the contract and the parties'

actual course of dealing." *Id.* (quoting *Burger King*, 471 U.S. at 478-79). Finding

insufficient minimum contacts, the Sixth Circuit reasoned that:

> the parties did not engage in a one-time transaction, but in a continuing
> business relationship that lasted a period of many years. Defendants
> reached out beyond Kansas' borders to conduct business with a company
> whose principal place of business it knew to be in Michigan. Such contacts
> are not "random," "fortuitous," or "attenuated," but are the result of
> deliberate conduct that amounts to purposeful availment.

*Id.*

In evaluating the quality of contacts, courts do not rely on numerosity alone. "A numerical count of the calls and letters has no talismanic significance." *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir.1989). Rather, "[t]he quality of the contacts as demonstrating purposeful availment is the issue, not their number or their status as pre-or post-agreement communications." *Id.* (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir.1985)). "[C]ontacts lack quality when they are initiated by the plaintiff rather than the defendant, in part because '[t]he unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum.'" *Air Products,* 503 F.3d at 551 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

Plaintiff has not persuaded the court that Defendants "purposefully availed" themselves of the privilege of acting in Michigan or causing a consequence in Michigan.

> A purposeful availment is something akin either to deliberate undertaking to do or cause an act to be done in Michigan or conduct which can be properly regarded as a primate generating cause of the effects resulting in Michigan, something more than passive availment of Michigan opportunities. The defendant will have reason to foresee being "haled before" a Michigan court.

*Witbeck v. Bill Cody's Ranch Inn,* 411 N.W.2d 439, 444 (Mich. 1987) (citation omitted). Here, the alleged actions of Defendants are simply to attenuated to establish purposeful availment and satisfy due process.

First, the court finds that James Acho's calls and his fax to Defendants are insufficient to create personal jurisdiction over Defendants. The Supreme Court has

specifically indicated that the purposeful availment analysis must focus on the defendant's *own* conduct, not the conduct of others. *See Burger King Corp.*, 471 U.S. at 475 (citations omitted) (holding that defendant cannot be haled into a jurisdiction as a result of the "unilateral activity of another party or a third person."). In *Burger King*, the Court held that "[j]urisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Id.* (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (emphasis in original)).

Thus, construing the facts in the light most favorable to the Plaintiff, the question is whether Defendant Patrick Eng's phone call to James Acho confirming the existence of a one-third referral agreement along with the later mailing of a referral check to Michigan constitute adequate connection with the forum state. The court also accepts the inherently vague allegation that "innumerable" phone calls were made in each direction. This limited contact is simply too random and fortuitous to establish purposeful availment. *See Burger King*, 471 U.S. at 475 (citations omitted) ("The "'purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . .'"). As the Sixth Circuit has held, "[t]he telephone calls and letters on which the plaintiff's claim of jurisdiction primarily depends strike us as precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions." *Kerry Steel, Inc. v. Paragon Industries, Inc.* 106 F.3d 147, 151 (6th Cir. 1997) (quoting *LAK,* 885 F.2d at 1300); *see also Scullin*

10

*Steel Co. v. National Ry. Utilization Corp.,* 676 F.2d 309, 314 (8th Cir.1982) ("The use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process.").

The record in this case presents a Missouri law firm and attorney responding to an inquiry from Michigan about referring a case destined for resolution in the Missouri court system and involving a car accident that happened in Missouri. The exhibits attached to the motions consist mainly of competing affidavits and recorded communications that principally originated in Michigan. Plaintiff presents no written contract signed by Defendants or other such documents containing terms that suggest their aim to reach into Michigan to do business or cause some other significant consequence. In that regard, all that is before the court is a photocopy of Plaintiff's file note attached to Plaintiff's facsimile cover sheet. The note summarizes Plaintiff's recollection of a phone call from Defendant Eng accepting the referral four days after Plaintiff's letter proposing the referral was faxed. The letter mentions two weeks of telephone conversations. There appears no agreement for a standing referral relationship, but, at best, Defendants' acceptance of a one-time referral that might create an account receivable in Michigan for Plaintiff. The tentative quality of these few contacts falls short of the constitutional requirement of purposeful availment establishing minimum contacts.

Plaintiff primarily relies on five cases in support of its assertion of personal jurisdiction: *Dedvukaj v. Maloney*, 447 F.Supp.2d 813 (E.D. Mich. 2006), *Onderik v.*

11

*Morgan*, 897 F.2d 204 (6th Cir. 1989), *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F.Supp. 656 (E.D. Mich. 1996), *Kiefer v. May*, 208 N.W.2d 539 (Mich. App. 1973), and *Sifers*, 177 N.W.2d 189. The cases are distinguishable or otherwise not helpful to Plaintiff's position.

Plaintiff relies on *Arriortua* and its citation to *Onderik* for the general proposition that "telephone and correspondence" alone can be sufficient contact with the forum state to establish jurisdiction. However, one case of telephone and correspondence as adequate contact with the forum state does not necessarily mean the same result in all instances. As articulated in *LAK*, "there is no reason to suppose that either [Defendant] intended to lay himself open to liability 'in every state of the union whenever [he made] telephone calls or wrote letters to a customer who [might subsequently claim] that they constitute[d] misrepresentations.'"[7] 885 F.2d at 1301 (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 931 (6th Cir. 1974)). "To determine if the nonresident purposefully availed himself of the privilege of acting in the forum or caused a consequence in the forum, the court must examine the content of the communication. 'It is the 'quality' of such contacts . . . that determines whether they constitute purposeful availment.'" *Arriortua,* 948 F.Supp. at 663 (quoting *Reynolds v. Int'l Amateur Athletic Fed'n,* 23 F.3d 1110, 1119 (6th Cir. 1994)). Plaintiff's brief fails to persuasively articulate how the

---

[7] In certain circumstances, allegations of fraudulent representations relied upon by Michigan residents can create personal jurisdiction under Mich. Comp. Laws § 600.705(2). Plaintiff, however, has not presented such an argument. *See e.g., K Mart Corp. v. Knitjoy Mfg.*, Inc. 542 F.Supp. 1189, 1194 (E.D. Mich. 1982) ("[A] single material representation, which was relied upon, may be sufficient contact with Michigan to allow courts here to exercise jurisdiction over the defendant under . . . [§ 600.705(2)]." (quoting *Hadad v. Lewis*, 382 F.Supp. 1365,1371 (E.D. Mich.1974))).

quality of the contacts with Michigan in the present case is adequate. For instance,

Plaintiff relies on *Onderik*, in which "personal jurisdiction was proper over a defendant

whose only contact with Michigan was by telephone and correspondence." *Id.*

However, in *Onderik* the contact was not merely responding to an inquiry initiated by a

Michigan resident, but rather using the phone to actively meddle in Michigan, and

potentially cause serious consequence in Michigan, the loss of Michigan based

employment.[8]

These cases are distinguishable because the defendants availed themselves of

the forum state by actively seeking to transact business with forum state residents,

effectively reaching into the forum state and initiating contact. In *Kiefer*, contact

between the plaintiff and the defendant began because the plaintiff advertised a car for

sale "in a national publication . . . circulated in [the forum state,] Michigan." *Kiefer*, 208

N.W.2d at 539. Similarly, in *Dedvukaj*, although the court did consider telephone call

communication, the court also relied on the defendant's use of an interactive website

which was intended to be used to sell items via internet auctions to residents of many

different states, including forum state residents. *Dedvukaj,* 447 F.Supp.2d at 822-23

---

[8]"To secure additional information about Onderik's criminal conviction, debarment and subsequent employment, [defendant] made numerous telephone and mail contacts with . . . a Michigan-based federal employee. . . . [This along with the acts of a co-defendant] could have been used against both plaintiffs and resulted in the loss of their Michigan-based employment. Thus, because defendants allegedly caused this consequence to occur within the state of Michigan, we hold that the first *Southern Machine* criterion has been satisfied." *Onderik*, 897 F.2d at 208. To meet the first criterion "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Southern Mach. Co.*, 401 F.2d at 381.

("Defendants held themselves out as shipping to the entire United States and most of the world . . . ."). In the present case, the Defendants have never advertised in Michigan and were not seeking to do business with Plaintiff. Rather, Plaintiff sought out Defendants, and Defendants responded to their inquiries. The Sixth Circuit has held that a defendant must do more than respond to requests or solicitations of Michigan residents in order to satisfy the purposeful availment requirement. *See Kerry Steel*, 106 F.3d 147. "It was [plaintiff] that initially contacted [defendant] in Oklahoma--and [defendant] responded without leaving home, as it were." *Id.* at 151.

*Sifers* is distinguishable for similar reasons. The defendant, a Kentucky attorney, "came to Saginaw, Michigan to lecture at a seminar of lawyers." *Sifers*, 177 N.W.2d at 191. While in Michigan, "engaged in this business[,] he discussed with plaintiff's Michigan counsel the business of becoming associated as counsel in plaintiff's [Kentucky] negligence case" and then later had "consultations with plaintiff and her Michigan attorney in Detroit." *Id.* at 192. In contrast, Defendants in this case were never physically present in Michigan to seek business with Michigan residents or discuss the case in question. The quality of Defendants' contact with Michigan does not rise to the level of purposeful availment.

Plaintiff has not satisfied its burden of showing that Defendants deliberately availed themselves of the benefits of Michigan law, and thus the court cannot exercise personal jurisdiction over them. *LAK*, 885 F.2d at 1295. ("A showing that [defendant] purposefully availed itself of the benefits and protections of Michigan law is essential to

the plaintiff's jurisdictional claim").  The court will therefore grant the motion to dismiss

and deny as moot the alternative request to transfer venue.

## IV. CONCLUSION

IT IS ORDERED that Defendant's "Motion Pursuant to FRCP 12(b)(2) for

Dismissal Based on Lack of Personal Jurisdiction" [Dkt. # 6] is GRANTED IN PART and

DENIED IN PART.  The motion to dismiss  for lack of personal jurisdiction is

GRANTED, and the alternative request to transfer venue pursuant to 28 U.S.C. §1404

and Federal Rule of Civil Procedure 12(b)(3) is DENIED AS MOOT.

IT IS FURTHER ORDERED that this action is DISMISSED.

      S/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated:  June 30, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, June 30, 2008, by electronic and/or ordinary mail.

      S/Lisa G. Wagner
      Case Manager and Deputy Clerk
      (313) 234-5522